**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Attorneys for plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **ROBERT BRIAN HIAASEN**, | Case No. 3:24-cv-00472 |
| Plaintiff, | **COMPLAINT** |
| v. | Civil Rights Action (42 U.S.C. § 1983) |
| **STATE OF OREGON**; **LELAND BEAMER**; **JOHN BATTLE**; and **BENJAMIN SMITH**, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### INTRODUCTION

1. This is a civil rights and negligence action concerning the defendants' deliberate indifference to plaintiff's serious medical needs and negligence. While in the custody of the Oregon Department of Corrections (ODOC), Defendants denied plaintiff constitutionally adequate medical care for his pectoral injury. The State Defendants were deliberately indifferent to his condition and did not provide timely care. The State Defendants ignored Plaintiff's

PAGE 1 – COMPLAINT

complaints of pain and failed to properly treat his pain. Defendants' delay in properly treating plaintiff caused permanent injury to his chest. By the time the surgeon was contacted to correct the pectoral injury, it was too late. Plaintiff is now permanently disfigured.

## JURISDICTION

2. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

3. This Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. § 1367 since they are so related to the § 1983 claim that they form part of the same case or controversy.

## VENUE

4. Venue is proper within the District of Oregon because all the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, the bulk of the acts and practices alleged herein occurred at Deer Ridge Correctional Institution (DRCI), in Jefferson County, Oregon.

## PARTIES

5. Plaintiff Robert Brian Hiaasen is a prisoner in the custody of the ODOC at DRCI.

6. ODOC is an agency of defendant State of Oregon. ODOC employed the staff responsible for providing medical care to plaintiff.

7. Defendant Leland Beamer is a physician at ODOC medical services at DRCI and is sued in his individual capacity. At all relevant times, Beamer acted under color of law.

8. Defendant John Battle was a nurse practitioner provider at ODOC medical services at DRCI and is sued in his individual capacity. At all relevant times, Battle acted under color of law.

PAGE 2 – COMPLAINT

9. Defendant Benjamin Smith is a physician at ODOC medical services at Oregon State Penitentiary (OSP) and is sued in his individual capacity. At all relevant times, Smith acted under color of law.

## FACTUAL ALLEGATIONS

10. On March 4, 2022, at DRCI, plaintiff suffered a catastrophic myotendinous rupture of the pectoralis major with 5.9 cm of retraction.

11. Dr. Beamer sent Plaintiff to an outside urgent care facility, The Center, for treatment but did not provide any authorization for the urgent care to provide any specific treatments. Plaintiff was returned without an MRI being performed. Dr. Beamer and plaintiff's other provider, Dr. Battle, did not treat his injury as an emergency, and simply provided tramadol and naproxen for pain. Plaintiff was in excruciating pain. The medications Beamer and Battle provided were not effective at treating the pain and the medications used were not consistent with the standard of care for treating a torn tendon.

12. On March 14, 2022, ODOC medical received the report from the Urgent Care facility. The report was for the exam taken the day of the injury. Transport Officer C/O Bradley stated that Dr. Christopher Healy, the Urgent Care physician, turned down treating plaintiff. Dr. Healy stated that he did not believe plaintiff had a complete rupture of the tendon and so did not order an MRI. Oddly, he stated in his notes that "surgical intervention is required at this time." The notes also inaccurately reflect that he was experiencing 4/10 pain—this was false. Plaintiff was experiencing the worst pain of his life (i.e., 10/10). The MRI conducted later showed that Dr. Healy was mistaken and misdiagnosed his condition.

13. On March 25, 2022, Dr. Healy prepared an amended version of the previous report stating that "*no* surgical intervention was required at this time." In fact, surgical

PAGE 3 – COMPLAINT

intervention was not only required but time sensitive, as a delay could render the injury inoperable. Dr. Healy also stated that plaintiff was satisfied with his care when this was false.

14.     On March 22, 2022, ODOC sent plaintiff out for an MRI which was performed at Central Oregon Magnetic Resonance Imaging. Plaintiff reported multiple complaints of pain and continuing inflammation, and loss of mobility with atrophy. The MRI findings show a superior labral tear extending just posterior to the bicep's anchor. This is the MRI left shoulder imaging and secondary to the chest imaging. The chest imaging reveals the Myotendinous rupture of the sternal head of the pectoralis major with a full thickness of 5.9 cm retraction. There were indicators of degenerative qualities. There is also mild strain to the affected area. The report shows both ends of the torn tendon intact to the insertions. The distance of those ends were identified. Neither of the ends are part of the "sternum." Nowhere on the MRI does it state the sternum insertion is where the rupture is located. Dr. Beamer and Dr. Battle both continued to treat plaintiff's injury otherwise. The sternum is in different location in the chest than the humeral area.

15.     Even though the MRI conclusively showed that plaintiff's injury was a myotendinous rupture of the sternal head of the pectoralis major, Dr. Beamer and Dr. Battle continued to treat his injury as a sternum tear. Also, even though the imaging showed a completely torn tendon, ODOC medical did not provide adequate medical care to treat plaintiff's pain.

16.     Due to the misdiagnosis, Dr. Beamer told Plaintiff, "I'm sorry but you are going to have to live with this for the rest of your life. Surgery for this type of injury is just not possible. We are going to get you some physical therapy and rehab the injury. That way you can

PAGE 4 – COMPLAINT

learn to deal with it." Dr. Battle also told Plaintiff that Plaintiff would not be getting surgical consultation.

17. On April 1, 2022, the progress notes indicated that "the pectoral injury had a complete tear from *the sternum*" and recommend physical therapy.

18. On April 4, 2022, Plaintiff attended a physical therapy session. The physical therapist Dr. Snell treated the injury as if it were located at the sternum. This caused Plaintiff pain and Plaintiff stopped the session and informed Dr. Snell that his injury could not be to the sternum. Dr. Snell agreed that the injury could not be to the sternum and indicated in his notes that surgical consultation was recommended as the appropriate treatment.

19. On April 13, 2022, Oregon Magnetic Resonance Imagining faxed an updated report to clarify the error. It states, "For clarification, the myotendinous rupture described above is near the humeral attachment."

20. After the medical note exposed Dr. Beamer's error, Dr. Beamer then stated that he had shown the MRI to two surgeons "off the record" who apparently had concluded that surgery was still not possible, regardless of the previous error. This is mistaken and there is no evidence in the medical records to show that such an off-the-record assessment of his MRI was ever conducted.

21. Months passed without his pain being addressed or any treatment for his pectoral injury.

22. On June 24, 2022, plaintiff requested a copy of his medical file. On July 14, 20222, after receiving his records, plaintiff sent an emergency health request.

23. On July 26, 2022, Plaintiff was transferred from DRCI to OSP in Salem, Oregon. Plaintiff was told that he was scheduled to see a surgeon at OSHU. Dr. Smith was plaintiff's

PAGE 5 – COMPLAINT

primary care provider. He did not arrange for plaintiff to promptly receive a surgical consult until March 2023, approximately one year from the date of the injury.

24. On March 14, 2023, plaintiff underwent an examination at OHSU by Dr. Mirarchi. Dr. Mirarchi concluded that due to the age of the tear, the tear to his pectoralis muscle was "not reparable."

25. After this appointment, plaintiff continued to experience significant pain in his chest and arm. He has not received any pain medication to adequately treat this pain.

26. Each individual acted under color of law and in their personal and professional capacities when they ignored Hiaasen's requests for protection and deliberately placed them in harm's way.

27. Plaintiff employed the prisoner grievance procedure and exhausted the grievance procedure in full.

28. Plaintiff filed Tort Claims Notices within the time allotted by statute.

## COUNT I

### (42 U.S.C. § 1983 – against Beamer, Battle and Smith)

29. Plaintiff re-alleges all prior relevant paragraphs as if fully set forth herein.

30. Beamer, Battle and Smith were deliberately indifferent to Hiaasen's serious medical needs in failing to assess and treat Hiaasen's pectoral injury.

31. As a result of their deliberate indifference, Defendants Beamer, Battle and Smith violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In failing to provide appropriate and medically indicated treatment, as set forth above, Plaintiff suffered physical harm, including permanent injury to his pectoral muscle. Defendants Beamer, Battle and Smith knew or should have known

that failing to provide adequate care to Plaintiff promptly would result in his suffering physical harm, including permanent harm to his pectoral muscle, and severe physical and mental pain and suffering.

32. As a result of the Beamer, Battle and Smith's violations of Plaintiff's Constitutional rights, Plaintiff suffered permanent physical harm and severe physical and mental pain and suffering. Accordingly, Plaintiff is entitled to economic and non-economic damages against Beamer, Battle and Smith in an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for Plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT III

## (Negligence)

## (Against Defendant State)

33. Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

34. Defendant State's treatment of plaintiff fell below the applicable medical standard of care and was negligent in failing to assess and treat plaintiff's pectoral injury.

35. Defendant State's treatment of plaintiff fell below the applicable standard of care and was negligent.

36. Defendant State knew or should have known that failing to promptly provide adequate care to plaintiff would result in his suffering permanent physical harm and disability to his chest and arm, as well as severe physical and mental pain and suffering.

37. Defendant State failed to use reasonable care in providing medical care to plaintiff as alleged above.

38. Defendant State owes plaintiff a higher standard of care because of the nature of incarceration. As a ward of the State, Defendant State manages and controls all aspects of

plaintiff's health care and decides when a request for a medical appointment will be granted. Plaintiff, as an incarcerated person cannot choose his medical treatment or providers. Had plaintiff been a free person, he would have sought the appropriate treatment immediately and had some form of treatment rendered. However, as an incarcerated person, when plaintiff sought treatment while in ODOC's custody, his pleas for treatment were ignored. ODOC voluntarily took the custody of plaintiff under circumstances such as to deprive plaintiff of normal opportunities for protection and created a non-delegable duty to ensure that plaintiff was able to access adequate medical care while incarcerated. Defendant did not meet its obligation to provide for "healthcare, including medical, dental, mental health care and pharmacy services, that compl[ies] with appropriate professional standards." OAR 291-124-0016(1)(c).

39.     Defendant State's conduct was unreasonable considering the risk of harm to plaintiff. Plaintiff's pectoral injury could have been easily treated in a timely fashion. If it had been treated earlier, he could have received corrective surgery. Instead, defendant unreasonably disregarded plaintiff's requests for medical assistance concerning his pectoral injury, and now his injury is permanent.

40.     As a direct and proximate result of Defendant State's negligence, plaintiff suffered physical harm and severe physical and mental pain and suffering. Because of Defendant State's failure to treat his pectoral injury sooner, plaintiff suffered permanent damage to his arm. He will require future treatment because of Defendant State's conduct.

41.     Plaintiff provided ODOC with a timely Tort Claims Notice.

42.     Defendant State's conduct was a substantial factor in causing harm to plaintiff.

43.     As a result of Defendant State's conduct, plaintiff suffered economic and non-economic damages in an amount to be proved at trial.

44. Plaintiff is entitled to a prevailing party fee, his costs, and his disbursements.

45. Plaintiff should be fully and fairly compensated for these economic and non-economic damages in a sum that is just as determined by a jury; however, the amount of economic damages are estimated to be $500,000 and the noneconomic damages are estimated to be $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Hiaasen prays for relief against all defendants, severally and individually, as follows:

a. Economic damages in an amount not presently known or ascertainable but to be proven at trial; here estimated to be $500,000;

b. Non-economic damages in an amount not presently known or ascertainable but to be proven at trial; here estimated to be $1,000,000;

c. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d. For such other and further relief as may appear just and appropriate.

**Plaintiff demands a trial by Jury.**

Dated: March 15, 2024

**Law Offices of Daniel Snyder**

*/s/ John Burgess*
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 9 – COMPLAINT